IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| GALEWOOD WEST DEVELOPMENT, INC., | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 6:23-cv-03024-MDH |
| CITY OF NIXA, MISSOURI, BRIAN STEELE, TRAVIS COSSEY, BRIAN BINGLE, DOUG COLVIN and LARRY COVINGTON, | ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Before the Court are the following motions: Defendant City of Nixa Missouri's Motion to Dismiss (Doc. 107); Motion to Dismiss Defendants Cossey, Steele, Bingle and Colvin (Doc. 106); and Motion to Dismiss Covington. (Doc. 110). The motions are ripe for review. Plaintiff has now filed a third amended complaint after Defendants' previous motions to dismiss its prior complaints. Plaintiff has had multiple attempts to respond to Defendants' arguments and to state a claim in its amended pleadings. Plaintiff's third amended complaint brings the following claims: Count I – Violations of 42 U.S.C. § 1983 (Taking Without Due Process of Law) Against City of Nixa; Count II – Racial Discrimination Pursuant to 42 U.S.C. §§ 1981(b) and 1983; Count III –City of Nixa, Unjust Enrichment; and Count IV – Against City of Nixa for Quantum Meruit.

The City of Nixa's motion argues the following: Counts III and IV fail to state a claim as they are barred by the municipal statute of frauds; Count I fails to state a claim as it is time barred on its face and fails to state a claim as Plaintiff has failed to plead any possessory interest in property taken by invasion or regulation; and Count II fails to state a claim because a municipality cannot be liable for violations of Section 1981. The City also argues Count II fails to state a claim

1

under Section 1983 as the attachments to the Third Amended Complaint demonstrate that Plaintiff never had any entitlement to funds from the City of Nixa and therefore the City could not discriminate based on race when there was no entitlement to the funds.

Defendants Brian Steele, Brian Bingle, Travis Cossey and Doug Colvin have filed a motion to dismiss Count II (the only count against them) arguing Plaintiff has failed to name the proper parties and has failed to state a claim against these individuals in either their official or individual capacities.

Defendant Covington also moves to dismiss Count II, racial discrimination pursuant to 42 U.S.C. §§ 1981(b) and 1983, the only count against him. Covington argues Plaintiff failed to name the proper official party and has failed to state facts sufficient to establish a claim against Covington in his official or individual capacity.

## BACKGROUND

To summarize Plaintiff's claims, as set forth in its most current complaint, Plaintiff agreed to undertake and facilitate the creation of a comprehensive water and sewer system for property that would be annexed into the City of Nixa. Plaintiff claims based on assurances from the Defendants it prepared a master drainage plan for the City of Nixa and constructed all improvements and infrastructure for the development. Plaintiff states based on the work that it peformed the City of Nixa was able to annex and develop the property for private residences, public buildings, and a school.

Plaintiff claims the City of Nixa was to pay it for its services, as well as for reimbursement of the infrastructure installation, as set forth in an annexation agreement and its Sanitary Sewerline

Reimbursement Policy of July 14, 1997.[1] After construction and installation, and after the City of Nixa made a partial payment to Plaintiff for Phase I of the school that would be part of the annexation plan, Plaintiff claims Nixa failed to abide by the sanitary sewer line reimbursement policy.

Plaintiff alleges in exchange for the City of Nixa's promises, and in furtherance of the assurances made by Defendants, Galewood invested substantial resources and acquired land and easements. In reliance on these assurances, Plaintiff states it granted the City of Nixa a perpetual utility easement. Plaintiff further alleges the reimbursement policy for water/sanitary sewer connections was directly related to development and annexation of the property.

Development of the property did not take place until late 2017. Plaintiff contends it contacted the City of Nixa in June 2015 to inquire about the status of payments based on connections to the master sewer line to serve the community and connect it to the lift station. Plaintiff claims it did not learn that development had begun until July 2022 and alleges Defendants concealed the development from it. Plaintiff's claims arise out of its claim that it has not been properly reimbursed or compensated for connection to the water and sewer lines.

**STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient facts, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual

---

[1] Step One was to determine the maximum capacity of the offsite sewer line in gallons per day. Step Two was to determine the final cost of the offsite sewer line, including construction costs, engineering costs, surveying costs, permit fees, change orders, and other costs directly pertaining to the offsite sewer line. Step Three was to divide the total cost of the offsite sewer line by the maximum capacity of the offsite sewer line to determine the cost of gallons per day. Step Four required all persons connecting to the offsite sewer line to pay the installing person the product of their maximum daily flow and the cost per gallon per day as determine in step three.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

## DISCUSSION

I. **City of Nixa's Motion to Dismiss**

   A. **Count III - Unjust Enrichment and Count IV - Quantum Meruit**

First, the City of Nixa moves to dismiss Counts III and IV – Plaintiff's quasi contractual claims. Nixa argues Plaintiff has abandoned its claim for breach of contract and now brings claims based on quantum meruit and unjust enrichment. Defendant moves to dismiss these claims stating any such claims are barred by Missouri's municipal statute of frauds. Citing *Davidson v. City of Grain Valley*, 2013 WL 12145864, *4 (W.D.Mo. July 12, 2013) ("The theory of quantum meruit cannot be invoked against a municipal corporation."). Plaintiff's response "concedes that, standing alone, these equitable remedies do not satisfy the municipal statue of frauds…" However, Plaintiff argues that coupled with other evidence alleged in the complaint that Plaintiff will show sufficient evidence of a contract, despite conceding no actual written contract exists.

In order to state a claim for unjust enrichment or quantum meruit against a municipality Plaintiff must establish: 1) there is a contract between the parties; 2) the contract is in writing and dated; 3) it is subscribed by the parties or their authorized agent; 4) it is within the scope of the municipality's authority or expressly authorized by law; and 5) the contract was made solely based on consideration to be performed after its execution. See *Tullock v. City of St. Louis*, 2019 WL 5803422, *2 (E.D.Mo. Nov. 7, 2019) citing, *DeMar v. Kansas City, Mo., School Dist.,* 802 S.W.2d 537 (Mo. Ct. App. 1991). Here, Plaintiff concedes no contract exists and has dropped any such claim.

4

Plaintiff's unjust enrichment and quantum meruit claims also fail when no contract exists. The Court finds these claims are barred by RSMo. § 432.070. Wherefore, the Court **GRANTS** Defendant Nixa's motion to dismiss Counts III and IV.

**B. Count I - Violations of 42 U.S.C. § 1983 (Taking Without Due Process of Law)**

The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, provides that private property shall not "be taken for public use, without just compensation." *Lingle v. Chevron USA Inc.*, 544 U.S. 528, 536 (2005). The Takings Clause "does not prohibit the taking of private property, but instead places a condition on the exercise of that power." *Id.* In other words, it "is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." *Id.* at 536-37.

There are two categories of taking: 1) a regulatory taking and 2) a physical invasion. See *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147-49 (2021). When the government physically acquires private property for public use, the Takings Clause imposes an obligation to provide the owner with just compensation. *Id.* A government commits a physical taking when: 1) it uses the power of eminent domain to formally condemn property; 2) it physically takes possession of property without acquiring title to it; or 3) when it occupies property – (e.g. by recurrent flooding as a result of building a dam). *Id.* "These sorts of physical appropriations constitute the clearest sort of taking." *Id.*

When the government, rather than appropriating private property for itself or a third party, instead imposes regulations that restrict an owner's ability to use his or her property, a different standard applies. *Id.* The Supreme Court has established that "while property may be regulated to a certain extent, if the regulation goes too far it will be recognized as a taking." This framework

5

typically applies to restrictions on land use in zoning ordinances, orders barring mining in certain areas, and regulations barring sales of certain items (e.g. eagle feathers). *Id.*

Plaintiff must plead and prove three elements to support a claim for an unconstitutional taking in violation of the Fourteenth Amendment and § 1983: (1) a property interest; (2) that has been taken under the color of state law; and (3) that the taking occurred without due process or just compensation. See *Parratt v. Taylor*, 451 U.S. 527, 535-37 (1981) (overruled on other grounds).

Defendant's motion to dismiss states that Plaintiff conveyed a public utility easement to Nixa. Defendant contends that a voluntary conveyance of private property to a municipality does not constitute a "taking" of property from a private party by a municipality without due process or just compensation. Defendant argues "it is difficult to imagine a factual scenario in which a government entity would be considered to be 'taking' property under color of state law without due process or just compensation by simply accepting what is voluntarily conveyed to it by a private party in accordance with its annexation requirement."

The Court must consider the allegations in a light most favorable to Plaintiff in analyzing the motion to dismiss. Plaintiff alleges it agreed to assist in the annexation of Daisy Falls by supplying water and sewer services to the new development; agreeing to facilitate and creating a comprehensive system for water/sewer needs; preparing a master drainage plan; and constructing all improvements and infrastructure. Plaintiff claims it performed all this work based upon assurances regarding cost recovery and payments. Galewood also alleges it granted Nixa a perpetual utility easement.

While Plaintiff alleges it is entitled to compensation for its conveyance of an easement and its development of the land, there are no allegations that a physical taking occurred or that a

6

regulatory taking was involved to constitute a claim under the Takings Clause of the Fifth Amendment.

This same reasoning applies to Defendant's arguments regarding the statute of limitations. Plaintiff alleges it could not have learned of the "taking" because of Defendant's unlawful conduct. However, Plaintiff's claims relate to alleged failure to compensate it for the improvements it made and not a regulatory or physical taking of Plaintiff's land. While the Court does not find it dispositive for purposes of its ruling, Plaintiff's allegations that the development of the land was concealed in some way is unclear. If the land was being developed in 2017 that would be apparent by simply viewing the property at issue. It is unclear how the development was "concealed" or unable to be discovered.

Nonetheless, the Court finds Plaintiff has failed to allege that Defendants violated The Takings Clause of the Fifth Amendment by taking private property for public use without just compensation. The Court **GRANTS** the motion to dismiss Count I.

### C. Count II - Racial Discrimination

Plaintiff alleges Defendants, acting under color of state law, deprived Plaintiff of its rights secured by the Equal Protection Clause of the Fifth Amendment to the United States Constitution and made applicable to the state's 14th Amendment, in violation of 42 U.S.C. §1983. Plaintiff alleges Section 1981 protects the right to make and enforce contracts.[2] The activities undertaken by Plaintiff include the making and performance and enjoyment of all the benefits and privileges, terms, and conditions of a contractual relationship as set forth pursuant to 42 U.S.C. § 1981(b).

Specifically, Plaintiff alleges Defendant exhibited discriminatory intent singling out Plaintiff for exclusion of the benefits of compensation and reimbursement pursuant to the 1997

---

[2] Here, Plaintiff does not have a breach of contract claim.

7

reimbursement policy by claiming that said policy does not constitute a legal obligation on the part of the City of Nixa, while not applying that standard to white developers who received reimbursement and payments pursuant that policy and similar policies. Plaintiff alleges that the exact same behavior undertaken by white developers doing business with the City of Nixa has resulted in compensation and that Plaintiff performed services pursuant to the same policy and was not compensated. The Court makes no determination of whether Plaintiff may ultimately prevail, or even survive summary judgment, on its claim. However, the Court finds that Plaintiff has alleged a claim of discrimination that survives a motion to dismiss and Defendant's motion to dismiss Count II is **DENIED.**

## II. Defendants Brian Steele, Brian Bingle, Travis Cossey and Doug Colvin

Defendants Steele, Bingle, Cossey, and Colvin (in their individual and official capacities) move to dismiss Count II of the third amended complaint. Defendants argue Plaintiff has failed to name the proper parties to this action despite this Court's prior order and Plaintiff has not stated sufficient facts to state a claim against any of the individuals named in either their official or individual capacities.

Plaintiff's Third Amended Complaint asserts claims against the offices of Mayor, City Planner, City Administrator, Director of the Department of Public Works, and Street Superintendent in their official capacities. As the Court has already stated, a suit against a state official in his "official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Department of State Police*, 109 S. Ct. 2304, 2312 (U.S. 1989). "[I]t is no different from a suit against the State itself." *Id.* Thus, official capacity claims can only be asserted against current public officers and correct officers are often substituted when incorrect officers are named. See Fed. R. Civ. P. 25. "A former official no longer holds office and cannot

8

Case 6:23-cv-03024-MDH    Document 127    Filed 10/07/24    Page 8 of 13

be sued in his official capacity." *Durham v. Martin*, 388 F.Supp.3d 919, 929-30 (M.D. Tenn. 2019) (citing Kentucky v. Graham, 473 U.S. 159, 166 n. 11 (1985)).

This Court granted Defendants' prior motions on this issue and ordered the following:

- To the extent Plaintiff has named a defendant in their official capacity Defendant's motion to substitute the current public officers is granted.
- To the extent Plaintiff intends to name a defendant in their individual capacity Plaintiff must identify that individual, the claims asserted against them, and the specific prayer for relief sought.
- Plaintiff shall file an Amended Complaint on or before February 29, 2024, clearly identifying each Defendant, the capacity in which the individuals are named, (substituting any public officials as set forth herein); and identify the claim being pursued and the relief sought against each defendant in each capacity.

Defendants argues that Plaintiff's Third Amended Complaint does not list the proper office holders, with the exception of the Director of Public Works. As such, Defendants move that because Plaintiff has failed to comply with the order to substitute the proper parties and the official capacity claims against the offices of Mayor, City Administrator, City Planner, Councilmember, and Street Superintendent they should be dismissed from this action. The Court agrees that Plaintiff has had numerous opportunities to correct this error and any official capacity claims against these offices shall be dismissed. Further, the claims against these named individuals in their official capacities are also dismissed.

With regard to claims against the individual defendants, Plaintiff's current Complaint alleges that the individual defendants made assurances to Plaintiff, concealed public development, and processed and misplaced documents that caused Plaintiff harm. The Complaint further alleges that defendant Cossey made assurances relative to payment and made determinations about Plaintiff's work. Plaintiff's only claim against the individual Defendants is Count II – racial discrimination.

9

A federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983. A governmental entity is not liable under § 1983 based on actions of its employees under a theory of respondeat superior. See *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States. *Wong v. Minnesota Department of Human Services*, 820 F.3d 922, 934-35 (8th Cir. 2016). "Violations of state law do not state a claim under 42 U.S.C. § 1983." *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000) (citing *Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995)). "Section 1983 guards and vindicates federal rights alone." *Id*. To maintain an "official capacity" claim, a Plaintiff must prove that Nixa maintained a policy or widespread custom that violated the law and caused his injury and that the alleged individuals were acting in accord with this policy. See *Artis v. Francis Howell North Band Booster, Ass'n, Inc.*, 161 F.3d 1178, 1181-82.

Defendants state Plaintiff's complaint fails to allege that any of the individual defendants were policy makers and further fails to allege that any of them created a policy or custom that resulted in the deprivation of Plaintiff's constitutional rights. The only policy Plaintiff cites to is a reimbursement policy that applies to the costs paid by other individuals/groups. Further, the Complaint does not allege that the individual defendants were acting to create an official policy or custom, or even that Plaintiff submitted an application for reimbursement or that any of the identified individuals actually made any decision whether to make any payments to Galewood.

Further, Plaintiff fails to allege any actions taken by Defendants that were racially motivated. In Count II, Plaintiff names all Defendants in the introduction, and then generally alleges Defendants' discriminatory intent was to single out Plaintiff for exclusion of benefits of

10

compensation and reimbursement that white developers received. However, Plaintiff does not allege any individual Defendant took any specific role in this decision, participated in the decision, had any authority to make the decision, nor any other action specifically taken by any individual defendant. Plaintiff only makes general, vague, reference to disparate treatment. There are insufficient allegations of action actions taken by any individual defendant to survive a motion to dismiss.

The Court has given Plaintiff multiple opportunities to state a claim against the individual Defendants. Here, without reiterating the arguments set forth in the Defendants' motion, the Third Amended Complaint is deficient as to any allegation establishing that the individuals were decision makers who failed to pay Galewood under a contract, or in any way interfered with Galewood's contractual or constitutional rights. There are no allegations that the individuals enacted a policy or violated a policy or participated in any discriminatory actions. At most Count II pleads that the alleged deprivation was made by the City of Nixa.

Wherefore, for the reasons set forth in Defendants' motion and suggestions in support, the motion to dismiss is **GRANTED** and the individual defendants are hereby dismissed.

### III. Covington's Motion to Dismiss

Plaintiff's Third Amended Complaint asserts a claim against Covington in his individual and official capacity in Count II – racial discrimination. First, Covington argues he no longer serves as the Street Superintendent to the City of Nixa and has not served in this position since approximately 2009. Despite the Court's prior order, Plaintiff has failed to substitute the proper office holder. Covington contends he no longer holds office and as a result cannot be sued in his official capacity. Covington has submitted an affidavit of the current City Clerk, Rebekka Coffey

that identifies Jeff Roussell as the current Street Superintendent. The Court agrees that Covington should be dismissed from this action in his official capacity.

Similar to the other individual defendants, Convington moves to dismiss Count II stating Plaintiff fails to sufficiently state plausible facts capable of forming a reasonable inference of misconduct under 42 U.S.C. §§ 1981(b) and 1983. The only paragraph of the complaint that specifically alleges conduct of Covington states he: "was involved in determinations about Plaintiff's work, as well as was in direct contact with Plaintiff for the express purpose of developing this sewer/water system and made assurances to Plaintiff regarding cost recovery and payments. Further, Defendant Covington pulled Plaintiff's contractor at a cost to Plaintiff of over $200,000.00 in order to divert the work to parties with relationships to City of Nixa officials using a false assertion that the work was not up to permit requirements, even after Covington signed an inspection and approved the permit."

Plaintiff's briefing argues that Covington, in his official capacity, used third party contractors in which he had a business interest and used his title as superintendent to force Plaintiff to rebuild significant portions of the infrastructure utilizing Covington's contractor. Plaintiff claims Convington is being sued personally because he abused his official capacity for personal benefit. However, this is not what is alleged in the complaint and more importantly there are no allegations of any racial discrimination, or any conduct taken based on race.

Finally, similar to the other defendants there are no allegations that Covington made any decisions or took any specific actions that violated Plaintiff's rights under § 1983, that he acted pursuant to official city policy, or that could state a cause of action for racial discrimination against him in either an individual or official capacity.

Wherefore, for the reasons set forth herein, the Court **GRANTS** the motion to dismiss Covington.

## DECISION

Wherefore, for the reasons set forth herein, the Court **GRANTS in part and denies in part** the City of Nixa's Motion to Dismiss (Doc. 107). The Court grants the motion to dismiss Counts I, III and IV. The Court denies the motion to dismiss Count II. The Court **GRANTS** the Motion to Dismiss Defendants Cossey, Steele, Bingle And Colvin (Doc. 106) and the Motion To Dismiss Covington. (Doc. 110). The only claim remaining is Plaintiff's Count II against the City of Nixa – Racial Discrimination.

**IT IS SO ORDERED.**

DATED: October 7, 2024

                                         */s/ Douglas Harpool*
                                         **DOUGLAS HARPOOL**
                                         **UNITED STATES DISTRICT JUDGE**