IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| GALEWOOD WEST DEVELOPMENT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 6:23-cv-03024-MDH |
| ) | |
| CITY OF NIXA, MISSOURI, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Defendant City of Nixa, Missouri's ("Defendant" or "City") Motion for Summary Judgment on Count II of Plaintiff's Third Amended Complaint. (Doc. 137). Defendant filed Suggestions in Support (Doc. 138), Plaintiff filed Suggestions in Opposition (Doc. 147), and Defendant has filed a reply. (Doc. 148). Pursuant to the Court's September 02, 2025, Order the parties were to file supplemental responses. Plaintiff filed his Supplemental Suggestions in Opposition (Doc. 157) and Defendant filed a supplemental reply. (Doc. 159). The motion is now ripe for adjudication on the merits. For the reasons stated herein, Defendant's Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

This case arises from an alleged dispute of payment for the development and facilitation of a comprehensive water and sewer system for property that would be annexed into the City of Nixa. Plaintiff is an Illinois Corporation in good standing with the State of Illinois. Plaintiff was registered to do business in Missouri starting in 2002 but was administratively dissolved in

1

Missouri for failure to file a registration report in 2008. Defendant is a city in Christian County, Missouri, and is a political subdivision of the State of Missouri.

Plaintiff agreed to undertake and facilitate the creation of a comprehensive water and sewer system for property that would be annexed into the City. Plaintiff prepared a master drainage plan for the City and constructed all improvements and infrastructure for the development. Plaintiff alleges the Defendant was to pay Plaintiff for its services, as well as for reimbursement of the infrastructure installation, as set forth in the Annexation Agreement and its Sanitary Sewerline Reimbursement Policy of July 14, 1997.[1]

Plaintiff alleges it contacted the City in June 2015 to inquire about the status of the reimbursement payments based on connections to the master sewer line to serve the community and connect it to the lift station. Development of the property did not take place until late 2017 and Plaintiff claims it did not learn that development had begun until July 2022. Plaintiff alleges Defendant failed to reimburse money owned to Plaintiff based upon the improvements and infrastructure for the development. Plaintiff alleges that other similarly situated contractors were paid by the City for similar developments, but that Plaintiff was not based upon his race.

Defendant now brings its Motion for Summary Judgment arguing that its entitled to Summary Judgment on Plaintiff's sole remaining count, Count II – Racial Discrimination Pursuant to 42 U.S.C. §§ 1981(b) and 1983.[2] Defendant argues that the undisputed facts establish that the

---

[1] The reimbursement procedure as defined in the Sanitary Sewerline Reimbursement Policy is as follows: Step One was to determine the maximum capacity of the offsite sewer line in gallons per day. Step Two was to determine the final cost of the offsite sewer line, including construction costs, engineering costs, surveying costs, permit fees, change orders, and other costs directly pertaining to the offsite sewer line. Step Three was to divide the total cost of the offsite sewer line by the maximum capacity of the offsite sewerline to determine the cost of gallons per day. Step Four required all persons connecting to the offsite sewer line to pay the installing person the product of their maximum daily flow and the cost per gallon per day as determined in Step Three.

[2] On October 7, 2024, this Court granted in part and denied in part the City of Nixa's Motion to Dismiss. (Doc. 107). The Court granted Defendant's Motion to Dismiss as to Counts I, III and IV. The Court denied Defendant's Motion

Defendant has no official policy that is discriminatory; no widespread discriminatory custom; there is no written contract complying with Mo. Rev. Stat. § 432.070 that requires Defendant to pay Plaintiff any money; Plaintiff has not been authorized to transact business in the State of Missouri since 2008; and Plaintiff's minority status played no role in Defendant's consideration and denial of Plaintiff's payment inquiry made in 2022.

## STANDARD

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## ANALYSIS

**I.      Statement of Unconverted Facts**

---

as to Count II. This Court also granted the Motion to Dismiss Defendants Cossey, Steele, Bingle and Colvin in addition to the Motion to Dismiss Defendant Covington. The only remaining claim is Plaintiff's Count II against the City of Nixa.

3

Defendant argues that Plaintiff denied paragraphs 1, 6, 7, 11, 12, 20, 22, 25, 26, 27, 28, 32, and exhibited 104 pages of documents with its Suggestions in Opposition for the reason of its denials. Defendant asserts that Plaintiff failed to cite to the Court any particular pages or paragraphs within the 104 pages exhibited that would support its denials and thus runs afoul of Federal Rule of Civil Procedure 56 and Local Rule 56.1. Defendant argues that as a consequence the host of unsupported factual allegations scattered throughout Plaintiff's Brief cannot be considered by this Court in ruling on its Motion for Summary Judgment.

Federal Rule of Civil Procedure 56 governs the procedures for summary judgment. It states:

> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) Citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purpose of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) Showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Local Rule 56.1(b) states:

> 1. A party opposing a motion for summary judgment must begin its opposing suggestions by admitting or controverting each separately numbered paragraph in the movant's statement of facts. If the opposing party controverts a given fact, it must properly support its denial in accordance with Fed. R. Civ. P. 56(c). Unless specifically controverted by the opposing party, all facts set forth in the statement of the movant are deemed admitted for the purpose of summary judgment.
>
> 2. If the opposing party relies on any facts not contained in the movant's suggestions, the party must add a concise listing of material facts. Each fact in dispute must be set forth in a separately numbered paragraph and properly supported in accordance with Fed. R. Civ. P. 56(c).

Local Rule 56.1(b)(1)-(2).

The Court agrees with Defendant. Plaintiff in its Suggestions in Opposition has failed to adhere to Federal Rule of Civil Procedure 56(c)(1) or Local Rule. 56.1(b). Plaintiff generally cites materials in the record such as "See Plaintiff's Third Amended Complaint" and "Exhibit B consisting of ten pages". (Doc. 147, Response to ¶¶ 5 and 6). Plaintiff however fails to cite to particular parts of the material in support of its position to contest Defendant's Statement of Uncontroverted Facts. Further, even though Plaintiff disagrees with portions of Defendants Statement of Uncontroverted Facts, it fails to produce any additional material facts not contained in the movant's listing. For the reasons stated, the Court will not take into account any material fact that was not added as a concise listing of material fact.

## II. Racial Discrimination Pursuant to 42 U.S.C. § 1981

Defendant next argues that there is no claim against the City based upon 42 U.S.C. § 1981. Specifically, Defendant argues that claims based upon 42 U.S.C. § 1981 cannot be directly raised against a state actor bur rather must be brought pursuant to 42 U.S.C. § 1983. Plaintiff argues that it has pled a prima facie cause of action under 42 U.S.C. § 1981.

42 U.S.C. § 1981 is titled equal rights under the law. Section 1981 states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of person and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). However, the United States Supreme Court examined the text and history of 42 U.S.C. § 1981 and 42 U.S.C. § 1983 and concluded that "the explicit remedial provisions of § 1983 [are] controlling in the context of damages actions brought against state actors alleging violation of the rights declared in § 1981." *Davis v. Kansas City Area Transportation Auth.*, No.

4:22-CV-00102-RK, 2022 WL 3220388, at *3 (W.D. Mo. Aug. 9, 2022) (quoting *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989)). In other words, "[a] federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983." *Davis v. Kansas City Area Transportation Auth.*, No. 4:22-CV-00102-RK, 2022 WL 3220388, at *3 (W.D. Mo. Aug. 9, 2022) (quoting *Artis v. Francis Howell N. Band Boosters Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998)).

The Court finds that 42 U.S.C. § 1981 does not provide for a general cause of action against a state actor. To the extent Plaintiff is seeking a cause of action against Defendant he must do so through 42 U.S.C. § 1983. To the extent Plaintiff is attempting to state a claim against Defendant under 42 U.S.C. § 1981, Plaintiff is unable to do. For the reasons stated, Defendant's Motion for Summary Judgment as to Count II – Racial Discrimination Pursuant to 42 U.S.C. § 1981 is **GRANTED**.

### III. Racial Discrimination Pursuant to 42 U.S.C. § 1983

Defendant argues that Plaintiff cannot prove the City has an official policy that is discriminatory, or any widespread discriminatory custom. Defendant argues that Plaintiff must plead and prove that the City had an official policy or widespread custom that violated the law and caused its injury. Defendant argues Plaintiff has not alleged and cannot show any policy statement, ordinance, regulation, or decision officially adopted and promulgated by the City that is discriminatory on its face and was used by the City to deny payment to Plaintiff. Defendant likewise argues that Plaintiff has not alleged and cannot show a widespread custom that violated the law and caused its injury, or that the City's alleged misconduct was so pervasive among the non-policy making employees of the municipality as to constitute a custom or usage with the force of law.

Plaintiff argues that it has pleaded a prima facie cause of action under 42 U.S.C. § 1983. Plaintiff additionally argues that the conduct of Defendant in its discharge of its obligations is indicia of discriminatory intent, its impact on a contractual relationship, and demonstrates that Defendant withheld payment against the only contractor/developer who is black and doing business with the City of Nixa. Plaintiff further argues that summary judgment is not appropriate at this stage of the litigation as not a single deposition of a single party has been undertaken, and discovery is still open in the case.

42 U.S.C. § 1983 provides a private right of action allowing individuals to sue state officials who, under color of state law, subject them to the deprivation of any rights, privileges or immunities secured by federal law. Where, as here, Plaintiff seeks to impose lability for violations of a constitutional right on a local governmental body via 42 U.S.C. § 1983, they "must show that there is an official policy or a widespread custom or practice of unconstitutional conduct that caused the deprivation of a constitutional right." *Marksmeier v. Davie*, 622 F.3d 896, 902 (8th Cir. 2010) (citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The relevant custom or practice of unconstitutional conduct must be "so widespread as to have the force of law." *Bd. of Cnty. Commrs. v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (citing *Monell*, 436 U.S. at 690, 98 S.Ct. 2018).

A plaintiff may prove unlawful racial discrimination through either direct or circumstantial evidence. *Lucke v. Solsvig*, 912 F.3d 1084, 1087 (8th Cir. 2019) (citing *Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014). If he presents circumstantial evidence, he must proceed under the framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas*, a plaintiff may establish a prima facie case of racial discrimination through evidence giving rise to an inference that he has been intentionally

discriminated against because of his race. *Lucke v. Solsvig*, 912 F.3d 1084, 1087 (8th Cir. 2019) (citing *Young*, 754 F.3d at 577). He may do so by showing that a similarly-situated person of another race received more favorable treatment. *Young*, at 578. That person must be "similarly situated in all relevant respects." *Id*. (quoting *Chappell v. Bilco Co.*, 675 F.3d 1110, 1119 (8th Cir. 2012)).

A person is similarly situated to the plaintiff if he or she possesses all the relevant characteristics the plaintiff possesses except for the characteristic about which the plaintiff alleges discrimination. *See Barstad v. Murrary Cnty.*, 420 F.3d 88, 886§87 (8th Cir. 2005). What constitutes a "relevant respect" or characteristic varies based on the context. *See id*. The plaintiff has the burden of locating similarly-situated comparators. *Lucke v. Solsvig*, 912 F.3d 1084, 1087 (8th Cir. 2019) (citing *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994)). If a plaintiff succeeds in establishing his prima facie case, the defendant must then show a "legitimate, non-discriminatory reason" for the challenged conduct. *Young*, 754 F.3d at 577–78. Legitimate, non-discriminatory reason must be "clear and reasonably specific." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Should the defendant articulate such a reason, the burden shifts back to the plaintiff to show that the offered reason is pretextual. *Young*, 754 F.3d at 578. This requires more than merely disputing the reasons; the plaintiff must present evidence "that the reason was false, and that discrimination was the real reason." *Ryther v. KARE 11*, 108 F.3d 832, 838 n.5 (8th Cir. 1997) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

The plaintiff may show pretext either though discrediting the proffered reasons or through showing "that a discriminatory reason more likely motivated the [defendant]…." *White v. McDonnell Douglas Corp.*, 985 F.2d 434, 436 (8th Cir. 1993) (quoting *Burdine*, 450 U.S. at 256,

8

101 S.Ct. 1089). In this Court, "the applicable standard … on summary judgment … 'require[s] only that [the] plaintiff adduce enough admissible evidence to raise a genuine doubt as to the legitimacy of the defendant's motive, even if that evidence [does] not directly contradict or disprove [the] defendant's articulated reason for its actions.'" *Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011, 1021 (8th Cir. 2005) (quoting *Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 945 n.8 (8th Cir. 1994)). However, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.

Here, Plaintiff has alleged that similarly situated persons, white contractors, were reimbursed while Defendant has failed to fully reimburse Plaintiff alleging discrimination based on race was the defining factor. Plaintiff has alleged in his affidavit that:

> The white contractors that were paid without complying with the requirements imposed upon black contractors, the developer of the Springs through June 2003, 2004, which totaled which reimbursed white developers the sum of $60,062.91, the developers of Maplewood November 2002 through November 2004, which is reimbursed white developers $115,930.35, the developers of Park Hill Place and Jeff Lervy in July of 2004, which reimbursed white developers $34,993.35, the developers of Spring Valley, which reimbursed white developers on September 14, 2004, which reimbursed white developers $30,216.90, the White Villages Wicklow and Pat O'Riley for wok between July 2004 and January 2005, which reimbursed white developers $28,566.00 and $1,009.04, respectively, Fourteen Park Place in 2003 which reimbursed white developers $7,158.90, and Bud Gher, which during the same in 2003 which reimbursed white developers $10,474.20, Copper Leaf in June of 2005, which reimbursed white developers and developers/contractors $40,230.45, Morelock Builder and Wayne Morelock in May of 2021, $208,130.49, Summit and Meadows and Rose Hill Homes, LLC, 2015, which reimbursed developers an undisclosed amount, Lampe and Lampe Partners in July 2025, which reimbursed white developers $30,180.00.

(Doc. 158, ¶ 31). Defendant argues that although Plaintiff's affidavit states that it is made under oath, and under penalty of perjury, it does not state that it is being made based upon his personal knowledge. Defendant argues that Plaintiff does not state or describe anywhere in his affidavit: (a)

9

how or when he learned of any of the information alleged in paragraph 31; (b) the course of the evidence upon which he bases his allegation that any of the developers listed in paragraph 31 are white developers; (c) that he was a party to, or personally involved with, any of the transactions described in paragraph 31; (d) that he has spoken with anyone in order to obtain the information contained in paragraph 31, or with whom he has spoken; (e) that he has reviewed any documents of any kind in order to obtain the information alleged in paragraph 31; or (f) what particular documents that he has reviewed, researched or analyzed to make himself aware of the facts alleged in paragraph 31. As such, Defendant has objected to paragraph 31 of Plaintiff's Second Affidavit pursuant to Rule 56(c)(2).

> Federal Rule of Civil Procedure 56 governs summary judgment. It states in relevant part:
>
> (2) *Objection That a Fact Is Not Supported by Admissible Evidence*. A party may object that the material cited to support tor dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(2) and (4). In support of its position Defendant has filed two affidavits, one by Travis Cossey, who is the current Assistant Director of Nixa Utilities and Public Works and one by Jennifer Evans, the Director of Finance for the City of Nixa, Missouri. Defendant argues that the City has constructed two regional lift stations at significant cost to the City.[3] (Doc. 159-1, ¶ 6). When a developer desires to connect its new development to one of the City's two regional lift stations to enable sewer service by and through the City's sewer system, the developer pays the City, among other things, a fee for connecting to the appropriate regional lift station for sewer

---

[3] A lift station is a facility in a waste-water collection system that uses pumps to move sewage or stormwater from a lower elevation to a higher elevation when gravity flow is insufficient. (Doc. 159-1, ¶ 7).

service to its development, in order for the City to recoup a portion of the City's construction costs for the particular regional lift station. *Id*. at ¶ 8. The amount charged to the developer by the City is based upon a formula that takes into account the pro-rata burden placed upon the regional lift station by the particular development. *Id*. at ¶ 9. Defendant argues that those white developers Plaintiff mentioned in ¶ 31 of his Second Affidavit did not get reimbursed by the City but those amounts were in actuality money the developers paid the City to connect to the regional lift systems.

To further illustrate the point, Defendant submitted the affidavit of Jennifer Evans, the Director of Finance for the City of Nixa, Missouri. The affidavit states:

> I have researched, reviewed and analyzed the City's financial records from 2003 forward with respect to the particular developers and payments alleged by Mr. Benas in paragraph 31 of his second affidavit. The financial records that I have reviewed include, but are not limited to, cost-share ledger records, which memorialize lift station payments made by developers to the City; lift station receipts for the payments made by the developers to the City as identified in the City's cost-share ledgers; the City's available financial statements between 2003 and 2025; and the City's check ledger system and records to determine if checks were issued by the City made payable to the developers identified by Mr. Benas in paragraph 31 of his second affidavit during the years referenced. Based upon my research, review and analysis of the City's financial records, I can confirm that the following reimbursements alleged in paragraph 31 of Mr. Benas' second affidavit were made by developers to the City[.]

(Doc. 159-2, ¶¶ 3-5). The following table reflects the information presented in Ms. Evan's affidavit.

| Date | Developer | Amounts Paid to the City by Developer |
|---|---|---|
| 09/01/2004 | Larry Ballard (Paid to Shaffer) | 24,053.50 |
| 10/15/2003 | Larry Ballard (The Springs Phase I) | 2,354.51 |
| 06/01/2004 | Larry Ballard (The Springs Phase II) | 30,561.30 |

11

| | | |
|---|---|---|
| 12/21/2004 | Larry Ballard (The Springs) | 3,093.91 |
| | | **60,063.22** |
| | | |
| 11/08/2004 | Brent Peltzer (Maplewood) | 15,147.45 |
| 09/01/2004 | Brent Peltzer (Maplewood-pd to Shaffer) | 100,782.90 |
| | | **115,930.35** |
| | | |
| 08/01/2004 | Jud Lurvey (Park Hill Lots 1-56) | 12,797.68 |
| 11/03/2005 | JJL Enterprises | 22,195.67 |
| | | **34,993.35** |
| | | |
| 09/01/2004 | John Chandler (Spring Valley) | **30,216.90** |
| | | |
| 07/01/2004 | Ron Middleton (Village @ Wicklow Ph I) | 27,423.60 |
| 01/31/2005 | Ron Middleton (Village @ Wicklow Ph I) | 1,142.40 |
| | | **28,566.00** |
| | | |
| 08/10/2005 | 14 Park Place | **2,451.00** |
| | | |
| 12/31/2005 | 14 Park Place Phase I | 11,473.25 |
| 12/31/2005 | 14 Park Place Phase II | 5,921.80 |
| | | **17,395.05** |
| | | |

| 06/21/2005 | Copperleaf | 40,230.45 |

*Id*. at ¶ 5. Ms. Evans also stated that:

> Based upon my research, review and analysis of the City financial records, that (a) no checks were written by the City made payable to Bud Gehr for any reason in 2003; (b) no checks were written by the City made payable to Morelock Builder and/or Wayne Morelock for any reason in 2021; (c) no checks were written by the City made payable to Summit and Meadows and Rose Hill Homes, LLC, in 2015 for any reason; and (d) no checks were written by the City made payable to Lampe and Lampe Partners for any reason in 2025.

*Id.* at ¶ 6.

The information Plaintiff has submitted within his Second Affidavit is roughly approximate to the values provided by Ms. Evans within her affidavit. However, the difference between the two is that Plaintiff argues that these contractors were paid by the City while Defendant asserts that these contractors paid the City these amounts to reimburse the cost of the regional lift stations to service the sewer of those developments. Defendant is correct that Plaintiff has failed to cite within his second affidavit any indication of where he has a basis for this information or how he would be competent to testify within these matters. Given that, the Court will **SUSTAIN** Defendant's objection to ¶ 31 of Plaintiff's Second Affidavit. Further, the Court finds that based upon Mr. Cossey and Ms. Evan's affidavits that Plaintiff has failed to show reimbursements paid by the City to those similarly situated to Plaintiff with exception to race. Plaintiff having failed to prove a prima facie case of racial discrimination against Defendant, the Court will find in favor of Defendants for Count II. For the reasons stated, Defendant's Motion for Summary Judgment as to Count II – Racial Discrimination Pursuant to 42 U.S.C. § 1983 **GRANTED**.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. Summary Judgment is hereby entered in favor of Defendant regarding Count II – Racial Discrimination Pursuant to 42 U.S.C. § 1981 and § 1983.

**IT IS SO ORDERED**.

DATED: October 14, 2025

                                            */s/ Douglas Harpool*
                                            **DOUGLAS HARPOOL**
                                            **UNITED STATES DISTRICT JUDGE**